UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AEP INDUSTRIES INC.,

    Plaintiff,

v.                                  Case No. 16-C-391

THIELE TECHNOLOGIES INC.,

    Defendant.

**DECISION AND ORDER**

This case arises out of the purchase by Plaintiff AEP Industries, Inc., of industrial packaging machinery and equipment manufactured by Defendant Thiele Technologies, Inc. The case was first filed in the Middle District of Alabama but was transferred to this Court based on a forum selection clause contained in Thiele's proposal which that Court found to constitute the contract between the parties. Case No. 2:15-CV-315-WKW, Mem. Op. And Order, (M. D. Ala. March 29, 2016), ECF No. 36-1. Federal jurisdiction exists under 28 U.S.C. § 1332, and the case is before the Court on a motion to dismiss the complaint pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendant's motion to dismiss will be granted in part and denied in part.

**FACTUAL ALLEGATIONS AND CONTRACT DOCUMENTS**

AEP owns an industrial facility located in Montgomery, Alabama (the Facility) where AEP manufacturers flexible plastic packaging products. In 2013 Thiele sent AEP a written proposal to manufacture and install industrial machinery and equipment (M&E) at the Facility for AEP's manufacturing activities. ECF No. 27-2. The total price was $2,206,195. Among other

-1-

specifications, the M&E was to include two lines, each with a M1400-Split Side Weld Bag machine. Along with the proposal, Thiele made oral and written representations and warranties regarding the performance production capabilities of the M&E. Specifically, each M1400-Split Side Weld Bag machine was capable of processing 720 plastic bags and 60 cartons per minute. AEP relied on these representations in making its decision to purchase the M&E. ECF No. 27 at 2.

In addition to the forum selection clause referenced above, Thiele's written proposal included other "Terms and Conditions of Sale." ECF No. 27-2 at 28. The proposal expressly conditioned the sale on its Terms and Conditions:

> 1. Applicability: Sellers sale of products and services is expressly conditioned upon the terms and conditions contained herein. All quotations, offers to sell, proposals, acknowledgments and acceptances of orders by Seller are subject to these Terms and Conditions of Sale, and acceptance by Purchaser is expressly limited to them. Any conflicting terms and conditions set forth in any purchase order or similar communication submitted to Seller by Purchaser are objected to, and are deemed proposals for addition to the contract of sale, and do not become part of the contract of sale between Seller and Purchaser unless expressly and separately agreed to in writing by Seller. Authorization by Purchaser, whether written or oral, for Seller to supply the products and services will constitute acceptance of these Terms and Conditions of Sale.

*Id.*

Among the Terms and Conditions of Thiele's proposal was the following warranty: "Seller warrants that the products sold are free from defects in materials and workmanship when used in the manner and for the purpose for which designed, and in accordance with all instructions and directions for installation, operation and maintenance furnished by Seller for a period of one year from receipt at Purchases designated delivery point, or 2500 hours of operation, whichever occurs earlier . . . ." *Id.* Thiele's liability for breach of the warranty was "expressly limited to the repair and replacement, at Seller's sole discretion, of any Product that is determined by Seller to be defective

-2-

under the terms of this warranty." *Id.* Lastly, the provision noted "The Warranties set forth herein are in lieu of all other warranties, whether expressed, implied or statutory, including but not limited to implied warranties of merchantability and fitness for a particular purpose." *Id.*

On or around December 3, 2013, AEP issued Thiele a purchase order for the M&E. AEP's Purchase Order states in capital letters that it is "SUBJECT TO THE FOLLOWING TERMS." ECF No. 27-2 at 35. Under the heading "Miscellaneous, AEP's Purchase Order states:

> This purchase order, as the same may be amended or modified in writing, supersedes all prior understandings, transactions and communications, or writings with respect to the matters referred to herein. When Seller has not expressly accepted this order, Seller, by commencing work hereunder, shall be deemed to have agreed to all provisions hereof.

ECF No. 27-1 at 4. One of the terms of AEP's Purchase Order was an express warranty of fitness, which reads: "Seller warrants the Material to be free from defects in workmanship and/or Material and to meet all of Buyer's specifications and performance requirements." *Id.*

On or around July 17, 2014, the parties agreed to modify one of the M&E's lines so AEP could manufacture quart sized plastic bags. The total price of the modification was $337,500. In August 2014, Thiele delivered the first M1400-Split Side Weld Bag machine (the First Line) along with accompanying machinery and equipment to the Facility for installation and testing. The First Line did not include the modification for quart sized plastic bags. ECF No. 27 at 2–3.

Following delivery the parties became aware that the First Line was unable to perform as represented by Thiele. Consequently, Thiele brought teams of engineers, installers, and repairmen to the Facility in an attempt to modify and repair the First Line so that it would function as promised. These modifications and repairs took place over approximately a six month period, with teams sometimes being brought in on a weekly basis. Despite these efforts, Thiele was unable to get the

First Line to function up to the specifications. The First Line does not and can not meet the production requirements promised by Thiele. Specifically, the First line is unable to process 720 bags and 60 cartons per minute. AEP also experienced other failures with the First Line. Thiele has not delivered or installed the second M1400-Split Side Weld Bag machine (the Second Line) and AEP is unaware of the status of that line. ECF No. 27 at 3.

AEP has paid Thiele $1,835,375.10 in connection with the purchase order. Additionally, AEP alleges that it has suffered consequential damages, incidental damages, and lost business profits as a result of the defective M&E. AEP has repeatedly demanded that Thiele remove the First Line from the Facility and refund $1,835,375.10 to AEP. Thiele has refused. ECF No. 27 at 4.

AEP sets forth five legal theories in the amended complaint: breach of contract; breach of express warranty; breach of implied warranty; misrepresentation/intentional fraud; and misrepresentation/reckless fraud. ECF No. 27. AEP seeks damages for a refund of $1,835,375.10 in addition to consequential damages, incidental damages, and lost business profits. AEP also seeks an order from this Court requiring Thiele (at Thiele's expense) to remove the First Line from the Facility. ECF No. 27 at 4.

**ANALYSIS**

**A. Standard of Review**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a short and plain statement of the claim showing that he is entitled to relief. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). It is not necessary for the plaintiff to plead specific facts and his statement need only "give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

For the purposes of a motion to dismiss, a judge must accept as true all of the factual allegations in the complaint. *Erickson*, 551 U.S. at 94. However, plaintiff is obligated to provide more than labels and conclusions and a "formulaic recitation of the elements of a cause of action will not do. . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rather, the complaint allegations "must be enough to raise a right to relief above the speculative level." *Id.* On a motion to dismiss, the Court may consider, in addition to the allegations set forth in the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also* Fed. R. Civ. P. 10(c).

**B. Economic Loss Doctrine**

Thiele argues that the economic loss doctrine bars AEP's Strict Responsibility Misrepresentation and Negligent Misrepresentation claims (Counts IV and V). The economic loss doctrine holds that parties to a commercial contract are generally limited to contract remedies for disputes over economic losses that arise thereunder and may not resort to tort remedies instead or in addition thereto. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis.2d 395, 400, 573 N.W.2d 842 (1998) ("The economic loss doctrine is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely 'economic' in nature."); *see also Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis.2d 910, 437 N.W.2d 213 (1989)

(adopting economic loss doctrine in Wisconsin). The Wisconsin Supreme Court has identified three policies that underlie the economic loss doctrine:

> [a]pplication of the economic loss doctrine to tort actions between commercial parties is generally based on three policies, none of which is affected by the presence or absence of privity between the parties: (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk.

*Daanen & Janssen*, 216 Wis.2d at 403.

The Federal Rules of Civil Procedure specifically permit pleaders to assert alternative theories and claims for relief. *See* Fed. R. Civ. P. 8(d). AEP argues that it can appropriately allege its misrepresentation claims in the alternative because Thiele claims that AEP has failed to plead a claim for breach of contract. Pl.'s Br. in Opp. 15, ECF No. 36. But the question here isn't whether AEP's breach of contract claim survives; it is whether this case involves contracting parties—which the parties admit this case does. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 162, 677 N.W.2d 233, 241 ("[T]he economic loss doctrine precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations."). Accordingly, the economic loss doctrine precludes AEP's strict responsibility misrepresentation and negligent misrepresentation claims, which will be dismissed.

**C. Breach of Contract and Warranty**

In its amended complaint AEP asserted separate claims for breach of contract (Count I), breach of express warranty (Count II), and breach of implied warranty (Count III). The only breaches alleged, however, are to express and implied warranties that AEP alleges arose out of the parties' contract. As a result, AEP's breach of contract claim collapses into its breach of warranty claims. Since no breach of any other term of the contract is alleged, I assume AEP's breach of

-6-

contract claim is limited to breach of express and implied warranties and will dismiss the separate breach of contract claim as redundant.

As for the breach of express and implied warranty claims, Thiele argues that other than its warranty that the M&E were free from defects workmanship and materials, the contract disclaims all other express or implied warranties. Because AEP's amended complaint fails to allege any defects in workmanship or materials, Thiele contends that its breach of express warranty claim should be dismissed. And because the parties' contract disclaimed all implied warranties, AEP's breach of implied warranty claim should be dismissed as well.

The issue raised by Thiele is governed by Section 2-207 of the Uniform Commercial Code (UCC), which is codified in Section 402.207 of the Wisconsin Statutes. That section, which is entitled "Additional terms in acceptance or confirmation," states:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) The offer expressly limits acceptance to the terms of the offer;
>>
>> (b) They materially alter it; or
>>
>> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of chs. 401 to 411.

Wis. Stats. § 402.207.

Applying that section here, it seems clear that Thiele's proposal constitutes an offer that AEP accepted via its purchase order. Thiele's offer "expressly limited" AEP's acceptance to the terms and conditions of its offer. ECF No. 27-2 at 28. Thiele also expressly rejected any modification of its terms and conditions absent express and separate written agreement: "Any conflicting terms and conditions set forth in any purchase order or similar communication submitted to Seller by Purchaser are objected to, and are deemed proposals for addition to the contract of sale, and do not become part of the contract of sale between Seller and Purchaser unless expressly and separately agreed to in writing by Seller." *Id.*

Had AEP wanted to avoid being bound by Thiele's terms and conditions, it could have stated that its acceptance of Thiele's offer was conditioned on Thiele's assent to its own terms and conditions. But AEP did not do so. As a result, as the United States District Court for the Middle District of Alabama concluded, "the provisions of AEP's purchase order are not part of the parties' contract, and the provisions of Thiele's offer govern." ECF No. 36-1 at 13. It is true that AEP's purchase order stated that it was subject to AEP's own terms and conditions. ECF No. 27-1 at 4. But "it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be expressly conditional on the offeror's assent to those terms." *C. Itoh & Co. (America) v. Jordan Int'l Co.*, 552 F.2d 1228, 1235 (7th Cir. 1977).

On the first page of its purchase order sent in response to Thiele's proposal, AEP expressly confirmed Thiele's offer. ECF No. 27-1 at 1. AEP's purchase order does not provide that AEP's acceptance was conditional upon Thiele's acceptance of AEP's terms and conditions because it does not purport to conditionally accept, or to object to, the terms of Thiele's Proposal. Instead, it merely states AEP's intent that AEP's "own terms and conditions," and not Thiele's, "control." But for its

-8-

own additional or contrary terms and conditions to apply, AEP was required to obtain Thiele's agreement separately and expressly in writing. ECF No. 27-2 at 28. AEP did not do so. "AEP's purchase order therefore operates as an acceptance of Thiele's offer. Further, because Thiele's offer expressly limits acceptance to the terms of the offer (ECF No. 27-2 at 28) and because AEP's terms and conditions materially alter Thiele's offer, AEP's terms and conditions are considered "proposals for addition to the contract," Wis. Stat. 402.207(2), which Thiele never accepted. As a result, AEP's proposed warranty terms are not a part of the contract between the parties and Thiele's controls.

This means that the contract between the parties includes the warranty provision contained in Thiele's terms and conditions. That provision disclaimed any implied warranties and limited the express warranties to those "set forth herein." ECF No. 27-2 at 28. Exclusions or disclaimers of implied warranties are lawful and must be given effect if they are in writing and conspicuous. Wis. Stats. § 402.316(2). Thiele's terms and conditions states: "**The Warranties set forth herein are in lieu of all other warranties, whether expressed, implied or statutory, including but not limited to implied warranties of merchantability and fitness for a particular purpose.**" ECF No. 27-2 at 28 (bold original). This language is sufficient to disclaim any implied warranties. It follows that AEP's breach of implied warranty claim should be dismissed.

The same conclusion does not follow, however, as to AEP's claim for breach of express warranty. Thiele expressly warranted that the M&E would operate at certain specified speeds. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Wis. Stat. § 402.313(1)(a). Thiele's proposal, which upon acceptance by AEP became the contract between the parties, specified the maximum speeds the

-9-

M&E would be able to operate: "720 bags per minue per bag machine (maximum)" and "60 cartons per minute per cartoner (maximum)." ECF No. 27-2 at 11. The amended complaint alleges that "[t]hese processing times were critical to Plaintiff's production requirements and Plaintiff materially relied on those representations in connection with its decision to purchase the M&E." ECF No. 27 ¶ 7. Thus, it would appear that the maximum speeds of the M&E specified in Thiele's proposal constituted an express warranty. Yet, the warranty provision of Thiele's terms and conditions purports to limit express warranty to defects in material and workmanship: "Seller warrants that the products sold are free from defects in material and workmanship . . . ." *Id.*

The amended complaint alleges that the M&E Thiele delivered has never been able to reach the speeds promised. Though the complaint does not allege why the M&E has not performed at the promised speeds, it seems unlikely it is due to a defect in material or workmanship, since Thiele engineers, installers and repairmen have been unable to get it to operate at those speeds. Instead, based on the allegations of the complaint and the description of the work Thiele personnel performed in their efforts to get the M&E to perform as promised (ECF No. 27-2 at 5–6), it appears more likely the problem is a design defect. Regardless of the cause, however, it is doubtful that Thiele's limitation of its express warranties would bar AEP from obtaining any form of relief for Thiele's breach of this warranty.

Section 402.316(1) of the Wisconsin statutes provides:

Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to s. 402.202 on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable.

-10-

Wis. Stats. § 402.316(1). As explained in the official comment to this section of the UCC, its purpose is "to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." Comment 1 to Uniform Commercial Code, § 2-316.

Applying that section to the facts alleged here yields two possible outcomes. First, the Court could reconcile Thiele's express warranty of the speeds of the M&E with its effort to limit its warranties by noting that the limitation language is ambiguous. The limitation states that "[t]he Warranties set forth herein are in lieu of all other warranties . . ." ECF No. 27-2 at 28. It is unclear, however, whether the phrase "Warranties set forth herein" refers only to the warranties set forth in the Warranty provision of the Terms and Conditions of Sale or to those set forth anywhere in the entire proposal. If it refers to the entire proposal, then Thiele's express warranty of the speed of the M&E survives. It would be one of the "Warranties set forth herein" and would not be excluded.

Alternatively, if the Court concluded it could not reconcile the words creating the express warranty with the words limiting it, the limitation would be inoperative. This follows because it would be unreasonable to permit a seller to create an express warranty in its offer and then add a term or condition at the end that effectively excludes the very warranty it created. The Wisconsin Supreme Court confronted a similar issue in *Paulson v. Olson Implement Company, Inc.*, 107 Wis. 2d 510, 319 N.W. 2d 855 (1982). There, the plaintiff purchasers of a grain-drying bin sued the seller for breach of express warranty when the bin failed to dry grain at the speed promised. The defendant seller moved for dismissal on the ground that the express disclaimer on the back of its order form excluded it. Although the Court concluded that the standard terms and conditions of the seller's

-11-

form did not apply to the sale in that case, it also noted, pertinent to this case, that "[e]ven if we determine that the words on the back of the Super Steel form relate to and disclaim Miller's express warranty regarding the capabilities of the specially manufactured equipment, they could not be construed as an effective disclaimer because they would be inconsistent with the express warranty, and they result in unbargained for language and the buyer's surprise." *Id.* at 520 (citing J. White and R. Summers, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE, 431–33 (2d ed. Hornbook Series 1980)). The same conclusion applies here.

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's motion to dismiss (ECF No. 31) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to Count I (breach of contract), Count III (breach of implied warranty), Count IV (strict responsibility/misrepresentation), and Count V (negligent misrepresentation), and those claims are dismissed. The motion is denied as to Count II (breach of express warranty). The Clerk is directed to place this matter on the Court's calendar for a Rule 16 scheduling conference. The parties may appear by telephone.

Dated at Green Bay, Wisconsin, this   2nd   day of September, 2016.

        s/ William C. Griesbach
        William C. Griesbach, Chief Judge
        United States District Court